IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN L. DYE, JR.,

                Plaintiff,

v.                                                     OPINION & ORDER

MARY KLEMZ, DR. GAANAN,                                       13-cv-284-jdp
THOMAS MICHLOWSKI, and EDWARD F. WALL,

                Defendants.

---

Plaintiff John Dye, a prisoner currently incarcerated at the Waupun Correctional Institution, brings Eighth Amendment and the Rehabilitation Act claims that officials at the Wisconsin Resource Center ("WRC") forced him to use a short-handled or "fingertip" toothbrush despite his suffering from a "chronic mallet deformed right thumb" and arthritis in both hands.

Currently before the court are several motions, including a motion for summary judgment based on plaintiff's failure to exhaust his administrative remedies, which I will deny.

A.  Exhaustion

Defendants have filed a motion for summary judgment based on plaintiff's failure to exhaust administrative remedies on his claims. Dkt. 44. An initial question is whether to allow plaintiff to submit a week-late response to the motion. After plaintiff's deadline to file a response passed without his submission of a response, defendants filed a letter requesting that the court grant their exhaustion motion. Dkt. 48. Plaintiff followed with a motion for extension of time to file his response, Dkt. 49, along with his belated response, Dkt. 51-52. Plaintiff states that he had difficulties arranging for copies of some of his summary judgment

documents. I will grant plaintiff's motion because he asks for only a short extension, his affidavit shows that he worked diligently in preparing his materials, and there is no prejudice to defendants, who followed up with a reply to plaintiff's belated submissions. Because I will consider plaintiff's response and defendants' reply, I will deny defendants' request for entry of summary judgment following plaintiff's failure to meet the original response deadline.

As for the substance of their summary judgment motion, defendants bear the burden of establishing their affirmative defense that that plaintiff failed to exhaust his available remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Defendants must show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999).

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory, *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), and "applies to all inmate suits," *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The purpose of administrative exhaustion is not to protect the rights of officers, but to give prison officials a chance to resolve the complaint without judicial intervention. *Perez v.*

*Wis. Dep't of Corr.*, 182 F.3d 532, 537-38 (7th Cir. 1999) (exhaustion serves purposes of "narrow[ing] a dispute [and] avoid[ing] the need for litigation").

Generally, to comply with § 1997e(a), a prisoner must "properly take each step within the administrative process," *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require," *Pozo*, 286 F.3d at 1025. In Wisconsin, the administrative code sets out the process for a prisoner to file a grievance and appeal an adverse decision through the Inmate Complaint Review System ("ICRS"). Wis. Admin. Code §§ DOC 310.07 (laying out four-step review process) and DOC 310.09 (setting rules for content and timing of grievances). Failure to follow these rules may require dismissal of the prisoner's case. *Perez*, 182 F.3d at 535. However, "[i]f administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

It is undisputed that plaintiff did not exhaust a grievance following defendants' actions that form the basis of his claims in this case—their refusals to provide him with a long-handled toothbrush in early 2013. But it is also undisputed that plaintiff did exhaust grievances about the toothbrush issue in 2008 and 2009 during a previous stint at WRC (plaintiff was transferred out of WRC in April 2010 and then returned in January 2013). Those grievances were resolved as follows:

- On November 28, 2008, plaintiff filed grievance no. WRC-2008-31291 stating that his arthritis made it difficult to use the toothbrushes provided him. The institution complaint examiner (ICE) recommended dismissing the grievance after talking to Dr. Loria, who said that there was no medical reason to provide a normal toothbrush. Plaintiff appealed this decision through the entire complaint review process.

- On March 26, 2009, plaintiff filed a grievance stating that he almost swallowed his "fingertip toothbrush." The grievance was initially rejected as previously addressed in the '31291 grievance, but the reviewing authority reversed that decision, stating that the previous grievance was not the same issue as plaintiff's accident with the fingertip toothbrush. The ICE then recommended dismissal, stating that the toothbrushes were not dangerous when used as directed and that plaintiff's grievance seemed to be another attempt at obtaining a long-handled toothbrush. Plaintiff unsuccessfully appealed this ruling through the entire complaint review process.

- On September 1, 2009, plaintiff filed a grievance contending that Dr. Loria failed to thoroughly examine him and thus gave incorrect information to the ICE in the '31291 grievance. This grievance was initially rejected as time-barred, but the reviewing authority reversed this decision. After meeting with plaintiff and reviewing medical records, the ICE recommended dismissing the grievance. Plaintiff unsuccessfully appealed this ruing through the entire complaint review process.

Usually, a grievance that predates the specific conduct alleged in the subsequent § 1983 action does not serve to exhaust administrative remedies concerning the later conduct. However, "prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (citing *Parzyck v. Prison Health Servs. Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010) (prisoner "not required to initiate another round of the administrative grievance process on the exact same issue each time" a deprivation occurred); *Howard v. Waide*, 534 F.3d 1227, 1244 (10th Cir. 2008) (prisoner "was not required to begin the grievance process anew when the very risk to his safety that he identified during the grievance process came to pass"); *Johnson v. Johnson*, 385 F.3d 503, 521 (5th Cir. 2004) ("As a practical matter, [plaintiff] could not have been expected to file a new grievance . . . each time he was assaulted"). "[O]nce a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Turley*, 729 F.3d at 650.

4

Plaintiff contends that the earlier grievances served to exhaust his current claims. On the face of it, this makes sense under *Turley*; plaintiff's arthritis and the pain it caused him to use the fingertip toothbrush in 2013 were the same problems he had in 2008-09. Plaintiff's belief that he had done all he needed to do to exhaust is bolstered by the response he received from the DOC Bureau of Health Services nursing coordinator in March 2013, which stated in part,

> I now understand this issue has already been addressed though the inmate complaint system in 2009 and a decision was made. Because you have already filing a complaint regarding your health concerns and it was decided upon though the inmate complaint system there is nothing additional that I will be addressing through correspondence.

Dkt. 51-2, at 24. This response gave plaintiff reason to believe that there was nothing to be gained by filing a new grievance.

In their brief-in-chief, defendants focus on the "continuing violation doctrine." They argue that "[t]he . . . doctrine does not apply to [plaintiff's] claims" because "the violation ends when the matter is resolved or treatment is provided," and the 2008-09 violations ended when plaintiff was transferred out of WRC in 2010. Dkt. 7, at 8 (citing *Heard v. Sheahan*, 253 F.3d 316 (7th Cir. 2001)). Plaintiff argues that the doctrine should apply in a way that exhausts his claims. But the continuing violation doctrine relates to the *accrual* of claims, *Heard*, 253 F.3d at 319, not the proper way to *exhaust* a claim where a continuing violation is occurring. This difference is illustrated in *Turley*, where the Seventh Circuit specifically discussed the continuing violation doctrine as it applied to the defendants' argument that some of the prisoner's claims were time-barred, *see* 729 F.3d at 651, but did *not* cite continuing violation doctrine cases in the section of the opinion discussing exhaustion for claims based on a series of alleged constitutional violations, *id*. at 650.

5

But even construing defendants' argument to be that I should import concepts from the continuing violation doctrine into the *Turley* standard, they fail to show that this dooms plaintiff's claims. Defendants focus on plaintiff's 2010 transfer; they state that "the violation ends when the matter is resolved or treatment is provided," and that the 2010 transfer mooted his claims. Dkt. 45 at 8 (citing *Heard*, 253 F.3d 316, and Wis. Admin. Code § DOC 310.03(13) (defining "moot" for purposes of inmate grievances). But a DOC regulation about mootness does not supersede *Turley*'s exhaustion analysis, and defendants do not explain why *Heard* should apply to the facts at issue here. Although the *Heard* court stated that defendants' alleged violations continued "until [plaintiff] left the jail," 253 F.3d at 318, that case did not involve a prisoner who was later returned to the same facility to encounter the same mistreatment, and defendants do not cite to any cases discussing such a scenario.

Defendants go on to argue that plaintiff did not exhaust his 2013 claims because the 2008-09 violations formed different claims than the 2013 violations. They point out two ways the sets of claims are different. First, they note that the 2013 claims are against a different set of defendants. Defendants Gaanan, Klemz, and Michlowski were not the subjects of plaintiff's claims regarding his treatment in 2008-09. But the exhaustion requirement is designed "to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Jones v. Bock*, 549 U.S. 199, 219 (2007). A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim. *Id*. Defendants' position would undermine the purpose of *Turley* by forcing a prisoner to file a new grievance every time a new defendant joined in a pattern of continuing mistreatment.

6

Defendants also argue that his current claims must be treated as separate from the 2008-09 claims because I did exactly that in denying plaintiff leave to proceed on the older set of claims. *See* Dkt. 32, at 5-7. But the reason plaintiff was not allowed to proceed on his 2008-09 claims is that he has "struck out" under 28 U.S.C. § 1915(g) and cannot proceed *in forma pauperis* on any claim unless that claim shows that he is in imminent danger of serious physical harm. Under § 1915(g), plaintiff could not bring claims for actions taken in 2008-09, because those specific actions did not place him in imminent danger of serious physical harm at the time he filed his complaint. The imminent danger question is irrelevant to the *Turley* analysis of whether plaintiff's grievances about the 2008-09 events served to put prison officials on notice about the toothbrush problem.

Because defendants have failed to show that plaintiff failed to exhaust his administrative remedies, I will deny their motion for summary judgment.

**B. Medical Authorization**

The parties have each filed submissions discussing the scope of medical records plaintiff will allow defendants to access. Dkt. 37, 39, 41. Plaintiff states that he understands that he will have to allow defendants access to relevant medical records so that they can defend against plaintiff's claims, but he argues that defendants' proposed release authorization form is too broad. I do not consider the parties' current submissions to be formal discovery motions, but I will provide guidance on what defendants should reasonably be able to discover after hashing out an authorization form.

Defendants have submitted a new proposed form that appears to rectify at least some of some of plaintiff's concerns. For instance, defendants have met plaintiff's request that the authorization expire upon the conclusion of the litigation. Defendants also limit the scope of

7

the time periods for which records must be released to records from 2004 and after (plaintiff alleges that he has suffered from arthritis since then). Plaintiff asks that the records be limited to the precise "dates, month(s), and/or years of the present matter at issue," Dkt. 37, at 2, but it is unrealistic to pick and choose records out of plaintiff's medical file based on individual days, and the entire scope of his treatment for his hand problems should be discoverable by defendants. I conclude that plaintiff will have to authorize the release of records from 2004 to the present.

But I agree with plaintiff that the proposed authorization form is unnecessarily broad regarding the types of medical records subject to release. It authorizes the disclosure of "all records, reports, documents . . ." specifically including "[c]ounseling, psychological, and/or psychiatric records, . . . alcohol and/or drug treatment records, and HIV and/or AIDS test results." It is unclear how these types of records could be relevant to plaintiff's claim that defendants were deliberately indifferent to his arthritis and deformed thumb. Defendants are not entitled to medical records that are irrelevant to the issues in this case, so they should amend the form to remove the irrelevant categories of documents.

The parties should work quickly to come to an agreement on the release of medical records. This court will not force plaintiff to release medical information, even if that information is relevant to his claims. Rather, I will dismiss the case if plaintiff will not allow access to the relevant information. If the parties continue to dispute the scope of the authorization, defendants should file a motion to dismiss based on plaintiff's withholding of information, and the parties can explain precisely what records are in dispute.

**C. Remaining schedule**

Defendants have filed motions to stay their expert disclosure deadline and the dispositive motion deadline. Dkt. 54 & 55. These deadlines have passed, so I will construe the motions as motions to amend the schedule. There is enough time remaining before the August 1, 2016, trial date to amend the schedule as follows. Defendants have already submitted a provisional expert report to plaintiff, Dkt. 56, but I will give them until April 4, 2016, to supplement that version if they so choose. The new dispositive motions deadline will be April 25, 2016.

ORDER

IT IS ORDERED that:

1. Plaintiff John Dye's motion for an extension of time to submit his response to defendants' exhaustion motion, Dkt. 49, is GRANTED, and defendants' motion for summary judgment following plaintiff's failure to meet the original response deadline, Dkt. 48, is DENIED.

2. Defendants' motion for summary judgment based on plaintiff' failure to exhaust his administrative remedies, Dkt. 44, is DENIED.

3. Defendants' motions to amend the schedule, Dkt. 54 & 55, are GRANTED. The schedule is amended as reflected in the opinion above.

Entered March 4, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge