IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN L. DYE, JR.,

                Plaintiff,

  v.                                                OPINION & ORDER

MARY KLEMZ, CARLO GAANAN,                       13-cv-284-jdp
THOMAS MICHLOWSKI, JON E. LITSCHER,
LOYDA LORIA, and STEVE SPANBAUER,[1]

                Defendants.

---

Plaintiff John Dye, a prisoner at the Waupun Correctional Institution (WCI), brings Eighth Amendment and Rehabilitation Act claims against defendant officials at the Wisconsin Resource Center (WRC). Dye claims that defendants forced him to use a short-handled toothbrush despite his suffering from a "mallet-type deformity" in his right thumb and arthritis in both hands, and that this caused him severe pain. Defendants have filed a motion for summary judgment, in which they contend that they were not deliberately indifferent toward Dye's medical needs and that they did not prevent Dye from caring for himself.

Although Dye has established that he suffers from a deformity in his right thumb and it is understandable that this might cause him pain while using a small toothbrush, Dye has failed to present any evidence that he made any attempt to alert WRC staff to problems with his left hand during his 2013–2014 stint at WRC. All of Dye's complaints during this time related to the pain the small toothbrushes caused his right thumb. In light of these complaints, the hygiene options that staff presented to Dye were adequate under the Eighth Amendment

---

[1] I have amended the caption to reflect the proper spelling of defendants' names.

and Rehabilitation Act. I will grant defendants' motion for summary judgment and dismiss the case.

PRELIMINARY MATTERS

A. Scope of claims

At this point, Dye's claims are limited to those regarding his 2013-14 stint at WRC. Dye originally also brought claims against defendants Loyda Loria and Steve Spanbauer regarding a 2008-09 stint at WRC, but I concluded that he could not proceed *in forma pauperis* on these claims for past harm because he has "struck out" under 28 U.S.C. § 1915(g). *See* Dkt. 32. I gave him a chance to pay the entire $350 filing fee for the case so that he could bring the additional claims, but he did not do so. I also denied Dye's motion to reconsider this ruling regarding his claims against Loria. *See* Dkt. 80. The court has not yet formally dismissed Loria and Spanbauer from the case, so I will do so in this order.

B. Recruitment of counsel

Dye previously moved for the court's assistance in recruiting him counsel, which I denied because he did not (1) provide the names and addresses of at least three lawyers who declined to represent him in this case; and (2) demonstrate that his is one of those relatively few cases in which it appeared from the record that the legal and factual difficulty of the case exceeded his ability to prosecute it. Dkt. 68 (citing *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007)). Along with his summary judgment materials, Dye now provides the names and addresses of three lawyers who have declined to represent him, which I take to be an attempt to renew his motion for the court's assistance.

But I will deny Dye's motion, because he has failed to demonstrate that this case exceeds his ability to prosecute it. He has failed to make any argument that would support the conclusion that this case is too difficult for him. Although, as discussed below, I will grant defendants' motion for summary judgment, it is not because of Dye's inability to litigate his case: he adequately presents his reasons for believing that defendants violated his rights. But I conclude that the undisputed evidence is insufficient to support his claims.

**C. Technical flaws in Dye's summary judgment submissions**

Defendants point to technical deficiencies in Dye's responses to their proposed findings of fact, which they contend shows that Dye fails to create any issue of material fact in this case. It is true that Dye's responses often do not cite directly to the exhibits he provided and instead point to broad categories of material such as "medical documents." However, I will not disregard the responses of a pro se plaintiff for technical flaws of this type and degree. Dye does attempt to respond to defendants' proposed facts and the documents he provides in support are not unreasonably voluminous. Although his citation is not perfect, Dye creates an adequate factual record for his case and therefore I will not disregard his responses.

UNDISPUTED FACTS

The following facts are undisputed except where noted.

Plaintiff John Dye is a prisoner in the state of Wisconsin system. Defendant Dr. Carlo Gaanan has been a physician at WRC since 2002. Defendant Mary Klemz was the deputy superintendent during the time relevant to this case. Dr. Thomas Michlowski has been the medical director of WRC since 1992. Defendant Jon E. Litscher is currently the secretary of

3

the Department of Corrections, which makes him the appropriate defendant for Dye's Rehabilitation Act claim.

At some point in the past, Dye suffered an injury to his right hand that required surgery.[2] The damage left by this injury caused lasting damage to the soft tissue near his thumb and left him with a mallet type deformity in his right thumb. This condition causes Dye pain in this thumb, and makes it difficult to bend it. Dye also says that he has arthritis in both hands.

Dye spent two separate periods of time at WRC. The first of these stints encompassed parts of 2008 and 2009.[3] During this time, Dye complained to medical staff about pain in his right thumb and requested the use of a larger toothbrush due to the pain that the standard issue "pinkey-sized" toothbrushes caused his right thumb and both hands due to arthritis. Defendants say that long-handled toothbrushes can be shaped into a weapon. Dye was given a left wrist brace during this period of time and at one point was prescribed Celebrex, a medication often used to treat arthritis pain. Dye met with Dr. Loyda Loria, who denied Dye's request for a regular toothbrush as medically unnecessary.

---

[2] Dye provides a 1992 radiology report that is unclear in its description of Dye's injuries. Dkt. 94-1, at 45. Although it describes Dye as a 29-year-old male with right wrist pain, the scan itself is labeled a "left wrist" scan. Dye believes this supports a history of pain in his left hand but the document seems to describe treatment of pain in his right hand. The reference to the left hand appears to be a mistake, although even if it is not, it is far too old by itself to suggest that defendants should have been aware of left-hand arthritis in 2013 and 2014.

[3] Although the conduct of WRC officials during the 2008–2009 period is not subject to this suit, aspects of Dye's treatment during this time are relevant to this case. Dye's claim that he suffers from arthritis in both hands is bolstered by the issuance of a left wrist brace and his complaints of arthritis pain in both hands during this time.

Dye was transferred to WCI in 2009. During his time in WCI, Dye was approved for the use of wrist braces on both hands.

Dye returned to WRC for his second stint on January 23, 2013. His health screening report stated that he was severely depressed. On January 28, Dye was examined by defendant Dr. Gaanan. Dye was treated for head, chest, and neck pain. During this examination, Dye described pain in his right thumb, and he requested a larger toothbrush as a remedy. Although Dye claims that Gaanan indicated he would have to seek approval from higher authorities at the WRC, Gaanan's treatment notes say that he denied the request at that time.

On January 29, Dye sent a letter to the Health Services Unit in which he wrote, "I do have medical documentation that clearly confirm[s] permanent injury to my permanently broken right thumb which being subjected to use the 'pinkey' size toothbrush is exacerbating pain in my thumb." Dkt. 87-1, at 8. He further added an excerpt from an undated medical report[4] that stated Dye suffers from a partial disability due to pain in his right thumb. The excerpt provided by Dye further noted that he was "able to work doing left-handed activities and light duty assist with the right hand." *Id*.

On February 26, Klemz responded to Dye's letter. She wrote in part:

> The medical department has not indicated that you require a full size toothbrush. Each individual's case is evaluated separately based on current assessments. If you disagree with the decisions made by your doctors you may certainly continue to address these issues with your treatment team and the staff at WRC. If you have specific medical concerns you may also write to Dr. Thomas Michlowski, Medical Director.

---

[4] Dye refers to statements made by Dr. William W. Dzwierzynski of the Medical College of Wisconsin. The original report from which Dr. Dzwierzynski's statements are drawn is not provided by Dye, nor is the date when he may have made these statements.

Dkt. 88-1. After receiving this letter from Klemz, Dye forwarded his January 29 letter to Michlowski.

On March 5, Dr. Gaanan saw Dye for a follow-up appointment. At this examination, Dye complained of increased pain in his right thumb. Dye also reported to Dr. Gaanan that the Relafen tablets and Capsaicin cream that he had been using for pain relief were not alleviating his pain. Dr. Gaanan examined Dye's thumb and increased Dye's dosage of pain medication. Although Dr. Gaanan's treatment notes do not indicate that Dye's use of the small toothbrush was discussed at this appointment, Dye contends that he did raise his concerns about the use of the toothbrush and its exacerbation of the pain in his right thumb.

On March 7, Dye sent a letter to Klemz that indicated he was waiting on a response from Michlowski regarding his toothbrush request.[5] On March 27, Klemz responded to this letter:

> We have reviewed you concerns regarding your desire to have a longer toothbrush given as you state "using a WRC issued pinkey toothbrush is painful . . . related to your right thumb deformity". Dr. Gaanan reviewed and denied your request. To assure overall safety at your institution we issue the pinkey size toothbrush to meet your oral needs. You may consider alternative approaches including the use of your other hand or an alternative finger. Our dentist also promotes the use of a rolled washcloth around your index finger and performing a scrubbing pattern on your teeth for oral care. Since we have addressed this issue multiple times, this herby closes your concern with alternative approaches provided.

---

[5] Dye also cites to a March 26, 2013 health service request. He states the request indicates that he was "experiencing pain in his 'left' thumb as well." Dkt. 93, at 7. This is the only mention of any pain in the left hand during this time. It appears as though Dye may have been referring to his right thumb. The pain issues that Gaanan and Dye were discussing during this time were all related to the right thumb and Dye does not rely on this request to claim that he made WRC officials aware of pain in his left hand. Unfortunately, Dye does not provide this document in his summary judgment materials.

Dkt. 88-2, at 1.

On April 1, Dye sent a response to this letter. He once again emphasized the pain to his right thumb caused by the use of the small toothbrush. He considered WRC's safety concerns surrounding the use of large toothbrushes to be unnecessary and provided examples of items that inmates were allowed to possess that he believed were far more dangerous than large toothbrushes. Dye also stated that Dr. Gaanan had made him believe that his toothbrush request was in the hands of "higher ups" during the March 5 appointment between the two. Dye did not indicate whether he had tried any of the alternatives that Klemz offered nor did he indicate that he was also experiencing arthritis pain in either hand.

On April 3, Dye states that he encountered Michlowski in the hallway and briefly spoke to him about his toothbrush request. Michlowski does not recall this conversation.

Dye left WRC on February 25, 2014, and was ultimately transferred to WCI. While incarcerated at WCI, Dye received an x-ray of his right hand on March 30, 2015. This x-ray showed signs of modest osteoarthritis, but no fractures or dislocations. Dye also received an x-ray of his left hand on April 25, 2016, that showed no abnormalities.

ANALYSIS

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgement as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 1999). All reasonable inferences from the facts in the summary judgment record must

7

be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

## A. Deliberate indifference

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Guitierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

To be considered "deliberately indifferent," an official must know of and disregard "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

Dye contends that WRC officials were deliberately indifferent to the combination of a mallet deformity in his right thumb and arthritis in both of his hands that caused Dye pain when he used the short-handled toothbrushes at WRC.

Dye must first provide evidence that he suffers from an objectively serious medical need. If Dye's use of this small toothbrush caused him severe and unnecessary pain, then these problems would rise to the level of a serious medical need. There is no dispute that Dye suffers from a mallet deformity in his right thumb that causes him pain. However, this alone would not be enough for Dye to claim a serious medical need in this case, because he might be able to use his left hand instead.

But Dye also contends that he suffers from arthritis in both of his hands, and this creates a severe limitation on his ability to use a small toothbrush with either hand. Dye provides some evidence that he has self-identified as having arthritis in both hands on a number of medical forms and health service request forms. Dye has also provided evidence that he has been issued a brace for his left wrist by WRC staff during a previous stint there. He was also given pain medication, but it is unclear whether that medication was meant for pain in both hands.

Although the most recent scan of Dye's left hand does not show he suffers from arthritis, Dye's statements within his summary judgment materials, his arthritis complaints during his 2008–2009 stint at WRC, and his prior treatment could allow a reasonable juror to believe he suffers from, at the bare minimum, chronic pain in his left hand. And although he does not describe in great detail *why* his hands hurt using the small toothbrush as opposed to a normal-length one, I will assume that he has a serious medical need stemming from use of the short-handled toothbrushes.

But this does not finish the analysis. I must still consider the individual defendants and determine whether each defendant was deliberately indifferent to Dye's medical need.

Dye contends that Gaanan was deliberately indifferent to his hand problems in 2013. In looking at Gaanan's notes, and treatment plan as a whole, no reasonable juror could find that Gaanan acted with deliberate indifference. Gaanan saw Dye twice during the relevant period of time. During his first appointment, Gaanan treated Dye for a number of issues, including pain in his right thumb, but Dye did not make any complaints of pain in his left hand. Because Gaanan did not believe the use of a larger toothbrush was medically necessary, Dye's request was denied.

Gaanan then saw Dye once again on March 5, 2013, specifically for the pain that he was experiencing in his right thumb. At this appointment, Gaanan examined the thumb, and made the decision to increase Dye's dosage of pain medication. Although Dye claims that he made another request for a larger toothbrush at this appointment, Gaanan and his notes do not describe any request. However, this is irrelevant to the determination of whether Gaanan acted with deliberate indifference. The critical omission from both Gaanan and Dye's recollections of this appointment is a mention of left-hand or wrist pain.

Viewing Gaanan's treatment as a whole, no reasonable juror could find he acted with deliberate indifference. He reasonably responded to Dye's complaints of right-thumb pain, and even increased his dosage of pain medication. Although Dye would have preferred a larger toothbrush and did not believe the increased pain medication would alieve his pain, prisoners do not have a right to choose the treatment they will receive for a given medical condition. *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

If Dye means to argue that Gaanan was deliberately indifferent because he failed to pick through years of records to reveal Dye's past assertions that he had left-hand arthritis, any oversight on Gaanan's part would constitute negligence at most. Dye's self-reported symptoms or his treatment history from years' previous are at best vague, and there is no indication that he carried a diagnosis of left-hand arthritis at the time of his transfer back to WRC. If Dye truly could not use his left hand to brush at the time, he needed to raise that issue with Gaanan. There is no evidence that he did.

Dye also contends that Klemz was deliberately indifferent to his medical needs. Upon viewing Klemz's responses to Dye's letters, no reasonable juror could believe that she acted with deliberate indifference to his concerns. In looking at all three of the letters that Dye wrote to Klemz, there is no evidence that Dye indicated any reason for requiring a larger toothbrush outside of the mallet deformity in his right thumb. In fact, within his letters, Dye provides an excerpt from a report written by Dr. William Dzwierzynski. This excerpt states that Dye "is able to work doing left handed activities." Therefore, with no evidence adduced by Dye that he ever expressed his left hand being a factor in his inability to use a toothbrush, no reasonable juror could believe that Klemz acted with deliberate indifference in her responses to Dye's concerns. Her proposed alternatives (use of his left hand, different finger on his right hand, or brushing his teeth with a rolled-up washcloth) were reasonable given the information provided to her by Dye and her understandable deference to the medical staff on medical issues. There is no evidence that Dye raised his left-hand pain to any defendant even after Klemz proposed that Dye use his left hand as an alternative.

Finally, Dye's claim against Michlowski revolves around the interaction that Dye alleges occurred on April 3, 2013. During this interaction in the hallway, Dye alleges that he told

Michlowski about his medical concerns and toothbrush request, to which Michlowski told Dye he would make a note in his medical file and speak with Dr. Gaanan. Michlowski does not recall this interaction. However, even assuming the conversation occurred and that Michlowski failed to follow-up with Gaanan, no reasonable juror could find that Michlowski acted with deliberate indifference. Dye had already had numerous interactions with Michlowski's medical staff and they had denied his specific requests while providing him with pain medication and alternative brushing techniques. Dye does not suggest that he detailed any new information that transformed the situation into an emergency that might trigger Eighth Amendment culpability for any prison official who ignored it. In short, the problem had already been addressed, and Dye retained the usual written mechanisms for contacting medical staff if his status changed. No reasonable juror would hold an official culpable for a chance verbal encounter of the type Dye raises here given all the other attention WRC staff gave him on this issue.

Because Dye fails to show that any of the defendants violated the Eighth Amendment, I will grant summary judgment to defendants on those claims.

**B. Rehabilitation Act**

Claims under the Rehabilitation Act, 29 U.S.C. § 701, require the plaintiff prove that "(1) he is a qualified person (2) with a disability and (3) the [state agency] denied him access to a program or activity because of his disability." *Wagoner v. Lemmon*, No. 13-3839, 2015 WL 449967, at *5 (7th Cir. Feb. 4, 2015) (quoting *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012)). "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap, with reasonable accommodation." *Knapp v. Northwestern Univ.*, 101 F.3d 474, 482 (7th Cir. 1996) (internal quotations omitted). Disability includes

the limitation of one or more major life activities, which includes care for oneself, *see* 42 U.S.C. § 12102(2)(A). In the context of cases like this one, "refusing to make reasonable accommodations [for a program or activity] is tantamount to denying access." *Jaros*, 684 F.3d at 672. In screening the complaint, I considered brushing one's teeth as a "program or activity," following similar cases that dealt with hygienic issues. *See id*. (showers made available to prisoners are a program or activity).

In most situations, a plaintiff must first request a reasonable accommodation before any liability for failure to accommodate is triggered. *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000). Furthermore, what constitutes a "reasonable accommodation" is limited by the relevant parties' knowledge of the disability. *Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1012 (7th Cir. 1997) (application of "reasonable accommodation" standard under the ADA).

The parties disagree on the issue of whether Dye is a "qualified person with a disability" for the purposes of a Rehabilitation Act claim. As discussed in above in the deliberate indifference analysis, I will assume that there is an issue of material fact about whether Dye suffers from arthritis in both hands.

However, Dye's Rehabilitation Act claim fails when it reaches the question of whether WRC denied Dye access to meaningful use of a toothbrush. At the time in question, there is no evidence that Dye actually carried a diagnosis of arthritis, nor is there any evidence that he told defendants about pain in his left hand, as opposed to the pain from his right mallet thumb. Given the evidence of what defendants actually knew at the time, the alternatives offered by Klemz were reasonable. Significantly, Dye did not raise his left-hand problem even after Klemz suggested he brush his teeth with his left hand. Defendants thought they were accommodating

his right-hand problem. Although Dye may have been suffering from left-hand pain, WRC officials are not required to accommodate disabilities of which they are unaware. *Hunt-Golliday*, 104 F.3d at 1012. Therefore, WRC did not fail to make reasonable accommodations and Dye's Rehabilitation Act claim fails.

ORDER

IT IS ORDERED that:

1. Defendants Loyda Loria and Steve Spanbauer are DISMISSED from the case.

2. Plaintiff John Dye's motion for the court's assistance in the recruitment of counsel, Dkt. 95, is DENIED.

3. Defendants' motion for summary judgment, Dkt. 84, is GRANTED.

4. The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered January 22, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge